## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Allstate Insurance Company, et al.,

                **Plaintiffs,**

v.

Utica Physical Therapy, Inc. et al.,

                **Defendants.**

_____/

Case No. 17-cv-13823

Judith E. Levy
United States District Judge

Mag. Judge R. Steven Whalen

## OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS [31, 34]

This is a RICO case, brought by plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company ("Allstate"), against multiple defendants. Allstate alleges that defendants – physical therapy clinics, medical clinics, a diagnostic imaging company, a transportation company, a clinical urine drug testing company, and their respective owners, agents and representatives – engaged in an insurance fraud scheme to seek reimbursement for "treatment and services that were not actually rendered, were medically unnecessary, were fraudulently billed,

and were not lawfully rendered." (Dkt. 1 at 2.) Plaintiffs filed their complaint against 14 defendants: (1) Utica Physical Therapy Inc.; (2) Rose Physical Therapy, Inc.; (3) Rose Pain Management Inc.; (4) Crystal Clear Health Management Inc.; (5) Bluebird Transportation Inc.; (6) Computerised Joint Surgery LLC; (7) Mini Invasive Orthopedics LLC; (8) Advanced Central Laboratory, LLC; (9) Stefan Glowacki, M.D., P.C.; (10) Mukhlis Tooma; (11) Lolo Tooma; (12) Arak Ishaq; (13) Sam Hakki, M.D.; and (14) Stefan Glowacki, M.D.

Default has been entered for eight of the defendants.[1] Defendants Stefan Glowacki, M.D. and Stefan Glowacki, M.D., P.C., filed a motion to dismiss (Dkt. 43) that will be adjudicated in a separate opinion and order. Pending are defendants Sam Hakki, M.D., Computerised Joint Surgery, LLC, and Mini Invasive Orthopedics, LLC's ("Hakki defendants") motion to dismiss (Dkt. 31), and defendant Advanced Central Laboratory, LLC's ("Advanced") motion to dismiss. (Dkt. 34.) The parties have fully briefed each motion. (Dkts. 40, 41, 53, 55.) Pursuant to E.D. Mich. Local R. 7.1(f)(2), the Court will determine the motions without oral argument.

---

[1] Utica Physical Therapy Inc. (Dkt. 25); Rose Pain Management Inc. (Dkt. 26); Lolo Tooma (Dkt. 27); Mukhlis Tooma (Dkt. 28); Arak Ishaq (Dkt. 49); Bluebird Transportation Inc. (Dkt. 50); Rose Physical Therapy, Inc. (Dkt. 51); and Crystal Clear Health Management Inc. (Dkt. 52).

## I. Background

Plaintiffs allege that defendants devised and implemented a scheme to fraudulently bill Allstate for medical procedures for patients involved in motor vehicle accidents who were eligible for Personal Insurance Protection ("PIP") benefits under Michigan's No-Fault Act. The alleged scheme involved a fraudulent network of entities, each providing a different type of treatment or services, utilizing various *quid pro quo* arrangements and referral relationships to unlawfully bill plaintiffs for more than $355,759.

According to the complaint, defendant Computerised Joint Surgery LLC ("Computerised Joint") is a Florida limited liability company with a principal place of business in Clinton Township, Michigan. (Dkt. 1 at 10.) Defendant Sam Hakki is the sole member of Computerised Joint. (*Id.*) Computerised Joint does not maintain a brick-and-mortar location, but instead operates out of the offices of defendant Mini Invasive Orthopedics, LLC and defendant Rose Pain Management, Inc. (*Id.* at 11.) Defendant Mini Invasive Orthopedics, LLC ("Mini Invasive) is a Florida limited liability company with a principal place of business in Madison Heights, Michigan. (*Id.*) Defendant Hakki is the sole member of Mini

Invasive. (*Id.*) Defendant Advanced Central Laboratory, LLC ("Advanced Central") is a Florida limited liability company with a principal place of business in Allen Park, Michigan. (*Id.* at 11–12.) Sam Hakette, alleged to be an alias for defendant Hakki, is identified in the Articles of Organization as a manager for Advanced Central. (*Id.* at 12.) Defendant Sam Hakki is a licensed physician in the state of Michigan, and is the sole listed manager of defendants Computerised Joint and Mini Invasive. (*Id.* at 14)

The 264-page complaint details a complex web of interaction between the defendants – including shared mailing addresses and office spaces, overlap in management, and extensive referral and *quid pro quo* relationships – as well as a variety of unlawful treatment and billing practices. (*Id.* at 25–27.) A non-exhaustive sampling of plaintiffs' allegations include:

> (1) defendants Hakki and Rose Pain Management Inc., submitting bills for P-stim treatment that was never rendered (Dkt. 1 at 42–47);
>
> (2) defendants Utica PT, Rose PT, Rose Pain, Computerised Joint, Mini Invasive, and Hakki submitting bills "for the same or similar services on the same date of service . . . being provided at different locations" (*Id.* at 59–72);

(3) defendants Computerised Joint and Mini Invasive dispensing durable medical equipment (DME) to patients, and subsequently billing plaintiffs, without the proper license from the Michigan Board of Pharmacy (*Id.* at 74–77);

(4) defendants Hakki and Stefan Glowacki, M.D. using a predetermined treatment protocol for patients, including documenting exaggerated symptoms, prescribing unnecessary and excessive physical therapy, and performing unnecessary injection-related treatments (*Id.* at 89–99);

(5) defendants Hakki, Rose Pain, Mini Invasive, and Computerised Joint making assorted false representations regarding the approval of, application of, and medical necessity for P-Stim treatments (*Id.* at 100–11);

(6) defendants Rose Pain, Computerised Joint, Mini Invasive, Stefan Glowacki M.D., P.C., Stefan Glowacki M.D., and Hakki making fraudulent and unnecessary MRI referrals to defendant Crystal Clear Health Management, Inc. (*Id.* at 111–14);

(7) defendant Advanced Central billing for unnecessary and excessive urine drug testing based on standing order requisitions from defendant Hakki (*Id.* at 114–19);

(8) defendants Rose Pain, Computerised Joint, Mini Invasive, Stefan Glowacki, M.D., P.C., Stefan Glowacki, M.D., and Hakki billing plaintiffs "for high-level office visits and consultations that did not occur as billed" (*Id.* at 158–69)

Plaintiffs' complaint includes 26 "exemplar claims" – individual patient narratives that detail various ways in which defendants engaged in the aforementioned conduct. The complaint is supplemented with over 500 pages of supporting documentation including itemized lists of billed services for disputed patient claims (Dkts. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10), copies of health insurance claim forms for allegedly duplicative services (*e.g.,* Dkts. 1-22, 1-23, 1-24, 1-25, 1-26, 1-27, 1-28, 1-29), and itemized lists of alleged damages (Dkts. 1-45, 1-46, 1-47, 1-48, 1-49, 1-50, 1-51, 1-52, 1-53).

Plaintiffs request a declaratory judgment that (1) Allstate has no obligation to pay pending and previously denied No-Fault insurance claims submitted by defendants, and (2) defendants cannot seek payment from Allstate or any person insured under an Allstate policy for benefits related to the fraudulent conduct detailed within the complaint. Plaintiff also brings causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), common law fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment.

## II.    Legal Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   Analysis

Defendants each raise numerous reasons the Court should dismiss plaintiffs' claims against them. The motions are briefed independently, but because they share the same underlying facts and raise many overlapping arguments, the Court will address them in a single opinion and order.

### 1. Reverse Preemption

#### a. RICO

The Hakki defendants argue that under the McCarran-Ferguson Act, plaintiffs' RICO claims are subject to reverse preemption in favor of state law. (Dkt. 31 at 14.) The McCarran-Ferguson Act provides that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). It also provides that "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any state for the purpose of regulating the business of insurance." *Id.* "The McCarran-Ferguson Act thus precludes application of a federal statute in face of state law 'enacted . . . for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the state's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (quoting 15 U.S.C. § 1012(b)).

Defendants argue that "permitting Allstate's RICO claims to proceed would 'invalidate, impair, or supersede' the No-Fault Act." This argument has been raised, and rejected, in numerous factually analogous cases in this district. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Vital Cmty. Care, P.C.*, No. 17-11721, 2018 WL 2194019, at *16 (E.D. Mich.

May 14, 2018); *State Farm Mut. Auto Ins. Co. v. Universal Health Care Group, Inc.*, No. 14-10266, 2014 WL 5427170, at *8 (E.D. Mich. Oct. 24, 2014); *State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *4 (E.D. Mich. Feb. 12, 2013).

In support of their argument, the Hakki defendants cite to an Eighth Circuit case in which the court determined that policy holders attempting to bring fraudulent accounting claims against insurers were reverse preempted, because "a court ruling on the specific things [plaintiff] alleges against this particular insurance company would mean asking the same questions as state insurance regulators ask and effectively double-checking their work." *Ludwick v. Harbinger Group,* 854 F.3d 400, 405 (8th Cir. 2017). There is no analogous attempt to duplicate the work of insurance regulators – i.e., determining the solvency of the insurance company – present in this case.

Unlike in *Ludwick*, plaintiffs here are the insurance companies, bringing a claim alleging the Hakki defendants "formed numerous entities in order to mask the amount of treatment for which [they] billed insurance" and proceeded to: (1) bill for services not rendered, (2) render unlicensed treatment, (3) unlawfully solicit patients, and (4) render

unnecessary treatment. (Dkt. 40 at 8–9.) Application of RICO in this context does not frustrate any declared state policy or interfere with any state administrative regime. *See, e.g.*, *Physiomatrix*, 2013 WL 509284 at *3 (quoting *Humana*, 525 U.S. at 310). Instead, as this Court and several other courts in the district have previously held, the application of RICO is consistent with the Michigan Insurance Code, as the insurance code provides for civil liability for fraud. *See, e.g., Vital Cmty. Care*, 2018 WL 2194019 at *6 (citing *State Farm Mut. Auto Ins. Co. v. Pointe Physical Therapy, LLC*, 68 F. Supp. 3d 744, 751–52 (E.D. Mich. 2014); *Universal Health Grp.*, 2014 WL 54271710 at *8).

Plaintiffs' RICO claims are not reverse preempted under the McCarran-Ferguson Act.

### b. Declaratory Judgment

The Hakki defendants argue that reverse preemption also precludes plaintiffs request for declaratory relief. (Dkt. 31 at 19.) In Count XXIII, plaintiffs ask the Court to declare that: (1) "Allstate has no obligation to pay pending and previously denied No-Fault insurance claims submitted by [defendants]"; (2) "[defendants] cannot seek payment from Allstate for benefits . . . or any claim for payment related

to the fraudulent conduct detailed in the [ ] complaint"; and (3) "[defendants] cannot balance bill or otherwise seek payment from any person insured under an Allstate policy or for whom Allstate is the responsible payor related to the fraudulent conduct detailed within Complaint." (Dkt. 1 at 251–52.) The Hakki defendants argue that plaintiffs' requests are "nothing more than an effort to avoid litigating the issue [in state court, under the No-Fault Act statutory scheme] of what services are necessary and what charges are reasonable." (Dkt. 31 at 20.)

For the same reasons that are articulated above regarding plaintiffs' RICO claim, reverse preemption does not bar plaintiffs' request for declaratory judgment. Plaintiffs' request for declaratory relief is "inextricably dependent on and connect[ed] to the underlying substantive counts." *See Universal Health Group*, 2014 WL 5427170 at *11. Plaintiffs' request for declaratory judgment is not reverse-preempted under the McCarran-Ferguson Act, and the claim will be permitted to go forward.

## 2. Failure to Plead

### a. Hakki Defendants

The Hakki defendants contend that plaintiffs' RICO and common law fraud claims fail to meet the enhanced pleading requirements for fraud claims as set forth in Fed. R. Civ. P. 9(b). (Dkt. 31 at 21.) Fed. R. Civ. P. 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy rule 9(b), plaintiffs must "allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir. 1993).

The Hakki defendants contend that plaintiffs' RICO and common law fraud claims lack the requisite particularity as to each of the moving defendants. (Dkt. 31 at 22.) Defendants in several other factually analogous and similarly pleaded cases in this district have unsuccessfully raised this argument (*see, e.g.*, *Vital Cmty. Care*, 2018 WL 2194019 at *7 (collecting cases)) and it fails for the same reasons here.

"The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff[']s claim of fraud."

*Coffey,* 2 F.3d at 162 (internal quotations omitted). Defendants argue that the allegations contained within the portions of the complaint dedicated to plaintiffs' RICO and common law fraud claims are too generalized to meet the heightened pleading standard. (Dkt. 31 at 22.) Plaintiffs argue that defendants ignore that each count incorporates all of the factual allegations contained within the complaint. (Dkt. 40 at 21.) There are numerous "exemplar claims" involving the Hakki defendants detailed within the complaint; two examples will suffice to demonstrate that the RICO claims and the common law fraud claim have each been plead with sufficient particularity.

Exemplar Claims 035237708 (Patient S.E.) and 0402879456 (Patient J.Q.) describe in painstaking detail, with citations to extensive supporting documentation, a scheme in which the Hakki defendants perpetuated a fraudulent billing scheme – in these particular cases, billing plaintiffs for duplicate services – through the U.S. Mail. (Dkt. 1 at 66–72.) These allegations "place[] each defendant on notice of their role in the alleged scheme, including the specific misrepresentations they are alleged to have made" and they "clearly allege[]how each defendant's role

is integral to the operation of the fraudulent payment submission scheme as a whole." *Vital Cmty. Care*, 2018 WL 2194019 at *7.

Accordingly, plaintiffs RICO and common law fraud claims against the Hakki defendants satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

### b. *Defendant Advanced*

Defendant Advanced argues that plaintiffs have simply failed to state a claim for common law fraud upon which relief can be granted. (Dkt. 34 at 14.) Advanced contends that plaintiffs' complaint neither alleges that Advanced made false statements nor alleges that Advanced had the requisite false intent. Advanced acknowledges that plaintiffs' filed an extensive, detailed complaint – but asserts that the various allegations of fraud raised by plaintiffs do not relate to Advanced's conduct. (*Id.* at 15.) As a clinical laboratory, Advanced argues that its sole function is to fulfill the laboratory orders it receives from physicians, and that all of the activities described in the complaint are consistent with the lawful business practices of a laboratory. (*Id.* at 17.)

Plaintiffs contend that Advanced's alleged practices, including billing for unnecessary testing and maintaining an improper referral

relationship with defendant Hakki, are not consistent with the lawful business practices of a laboratory and are instead indicative of both fraudulent statements and an intent to defraud. (Dkt. 41 at 21–22.)

Advanced's challenge is one that was raised and rejected in an analogous case in this district. *See Allstate Ins. Co. v. Total Toxicology Labs, LLC*, No. 16-12220, 2017 WL 3616476 (E.D. Mich. Aug. 23, 2017). As in *Total Toxicology*,

> "[t]he complaint includes allegations that [d]efendants . . . maintained improper referral relationships with [other defendants] and were aware of the unnecessary nature of many [of these] referrals; billed [plaintiff] and attested to the medical necessity of unnecessary confirmatory testing of expected, negative point-of-care screening results (in contravention of the standard of care for clinical laboratories); performed quantitative testing in many cases when they should have performed presumptive/qualitative testing instead, pursuant to the standard of care for clinical laboratories; . . . ; created standardized protocols and forms that encouraged unnecessary testing and ignored medical necessity in individual cases; and billed treatment knowingly and intentionally using improper coding."

*Id.* at *6. As numerous other courts in this district have concluded in numerous similar cases, "such documentation and explanation of the fraudulent scheme satisfies Rule 9(b) because it sufficiently puts the defendants on notice of the claims against which they will have to

15

defend." *Id.* (collecting cases). Accordingly, the allegations in the complaint and supported by the accompanying exhibits contain sufficient factual content to put defendants on notice of the fraud they are alleged to have committed.

Advanced's argument that "the [c]omplaint does not state when and where fraudulent statements were made or identify those responsible for the statements" is unpersuasive. Again, this is an argument that has been raised and rejected in numerous similar cases in this district. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 14-11521, 2015 WL 4724829, at * 8–9 (E.D. Mich. July 7, 2015) (collecting cases). In the Sixth Circuit, "a defendant may be liable for mail fraud, even if the defendant did not commit the mailing himself or herself, if the defendant is a 'willful participant[] in a scheme to defraud[,] and that the use of the mails . . . by the other participants were foreseeable and in furtherance of the scheme." *Id.* (quoting *United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013)).

In this case, particularly given plaintiffs' allegations that defendant Hakki used a pseudonym to establish a financial interest in Advanced (Dkt. 1 at 12), and that "[defendant] Hakki referred over 98% of the urine

samples received by Advanced [ ] relating to patients at issue in this complaint" (*Id.* at 119), plaintiff has sufficiently alleged that Advanced was a willful participant in the overall scheme, and that the fraudulent use of the mails by other participants in furtherance of the scheme was reasonably foreseeable.

Finally, Advanced argues that a general allegation that Advanced benefited financially from the wrongful billing is not enough, on its own, to sufficiently allege fraudulent intent. (Dkt. 34 at 16–18.) Plaintiffs have alleged more than a general allegation that Advanced benefited financially. Plaintiffs allege that a defendant Hakki used a pseudonym to establish a financial interest in Advanced (Dkt. 1 at 26); defendant Hakki's wife is the registered agent for Advanced (*Id.*); and defendant Hakki was responsible for 98% of the urine test referrals related to patients at issue in this case. (*Id.* at 119.) In the context of the complaint as a whole, plaintiffs have alleged sufficient facts, which if proven true, would establish defendant Advanced's fraudulent intent.

### 3. Civil Conspiracy

The Hakki defendants and defendant Advanced argue that because civil conspiracy is not an independent claim, and because plaintiffs' RICO

and common law fraud claims are insufficiently plead, the Court must dismiss plaintiffs' civil conspiracy claim. (Dkt. 31 at 26; Dkt. 34 at 18.) Because, for the reasons set forth above, the RICO claim and the common law fraud claim are sufficiently plead, the Court rejects this argument. Plaintiffs' common law fraud claim is a viable underlying tort which supports a civil conspiracy claim. The civil conspiracy claim will be permitted to go forward.

### 4. Unjust Enrichment

The Hakki defendants argue that plaintiffs' unjust enrichment claim should be dismissed because there is an existing contract that forms the basis for the claim. (Dkt. 31 at 24–24.) However, plaintiffs dispute the existence of a contract, "express or otherwise," between plaintiffs and the Hakki defendants. (Dkt. 40 at 24.) "[U]nless it is undisputed that there is an express contract between the same parties covering the same subject matter, [plaintiffs are] entitled to plead unjust enrichment as an alternative claim of relief." *Physiomatrix*, 2013 WL 509284 at *5. Because plaintiffs dispute the existence of a contract between the parties, the claim will be permitted to go forward. *See also Universal Health Group*, 2014 WL 5427170 at *11.

### 5. Payment Under Mistake of Fact

The Hakki defendants argue plaintiffs' claim of payment under mistake of fact should be dismissed because "all payments were made voluntarily with full knowledge of the facts and any mistake of payment was a mistake of law." (Dkt. 31 at 24.) Defendants contend that under the No-Fault Act, plaintiffs had the "unfettered ability to obtain records and to withhold payment until they were satisfied that the medical services were necessary" and to "challenge any charge believed to be excessive." (*Id.* at 25.)

Plaintiffs respond that benefits under the No-Fault Act are payable only for "reasonable charges incurred for reasonably necessary products, services[,] and accommodations for an injured person's care, recovery, or rehabilitation." (Dkt. 40 at 25 (citing Mich. Comp. Laws § 500.3107(1)(a)).) Defendants, by submitting claims to Allstate, represented to plaintiffs that the services for which they were seeking reimbursement were necessary, lawful, and reasonably billed. Plaintiffs argue that "voluntary" is a term of art in the context of claims for

payment under mistake of fact,[2] and given the totality of the circumstances in the alleged scheme, the voluntary payment doctrine is not applicable. (*Id.* at 29.)

Under Michigan law, where an allegedly voluntary payment was made under a mistake of fact, the voluntary payment doctrine generally does not apply. *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F.Supp.2d 848, 854 (E.D. Mich. 2000) (citing *Kern v. City of Flint*, 125 Mich. App. 24, (1983)). Given the nature of the allegedly fraudulent activity, and the extent to which plaintiffs did not, and could not, have had "full knowledge of all of the circumstances" of the alleged fraudulent scheme at the time each individual claim was paid, the voluntary payment doctrine is not applicable in this case. *See Montgomery Ward & Co.* 330 Mich. at 284. Plaintiffs' claim of payment under mistake of fact will be permitted to go forward.

### 6. Subject matter jurisdiction

Defendant Advanced argues that the Court lacks subject matter jurisdiction because neither diversity jurisdiction nor federal question

---

[2] "A voluntary payment is one made with a full knowledge of all the circumstances upon which it is demanded . . . ." *Montgomery Ward & Co. v. Williams*, 330 Mich. 275, 284 (1951) (quoting *Pingree v. Mutual Gas Co.*, 107 Mich. 156, 157 (1895)).

jurisdiction is applicable to the claims against Advanced. (Dkt. 34 at 10–11.) Advanced acknowledges plaintiffs' federal RICO allegations against the "Advanced Central Laboratory, LLC Enterprise" but contend that because Advanced is not named as a defendant to either count, no federal question has been pleaded against it. (Dkt. 53 at 3.) Advanced contends the complaint alleges only two state law substantive claims and only $15,981 in damages from fraudulent claims paid to Advanced – not enough to meet the $75,000 threshold required for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Plaintiffs contend they have pleaded fourteen federal questions, two of which are RICO claims involving the Advanced Central Laboratory, LLC Enterprise, and that "[t]he facts establishing Allstate's common law fraud and civil conspiracy counts against [Advanced] are directly related to its federal RICO counts against the other defendants." (Dkt. 41 at 15–17.)

For the reasons set forth above, plaintiffs have pleaded federal RICO claims that will go forward. (*See supra* Section III.2.) The Court has supplemental jurisdiction "over all other claims that are so related to the claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court has discretion to exercise supplemental jurisdiction when the federal and state claims "derive from a common nucleus of operative fact" and a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, plaintiffs have alleged a single set of facts in support of all of their claims. The Court has jurisdiction over the RICO allegations, and the state common law fraud and civil conspiracy claims are directly related to the surviving federal claims. Accordingly, the Court has jurisdiction over Advanced.

## IV.    Conclusion

For the reasons set forth above, the Hakki defendants' motion to dismiss (Dkt. 31) and Advanced's motion to dismiss (Dkt. 34) are DENIED.

IT IS SO ORDERED.

Dated: June 19, 2018              s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 19, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager